# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIONNE MACON,<br><br>**Plaintiff,**<br><br>v.<br><br>**BOARD OF EDUCATION OF THE CITY OF CHICAGO,**<br><br>**Defendant**. | Case No. 17 cv 08472<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION & ORDER

Plaintiff Dionne Macon sued her former employer alleging discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"). Before the Court is the Board of Education of the City of Chicago's ("Board") motion for summary judgment. (Dkt. 58). For the reasons stated below, the Board's motion [58] is granted.

## LOCAL RULE 56.1

As a preliminary matter, Plaintiff's briefing suffers from several Local Rule 56.1 issues that the Court must address. The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015); *Judson Atkinson Candies, Inc. v. Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[T]he Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1."); *Bordelon v. Chicago*

*Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (no abuse of discretion in striking responses consisting of evasive denials and improper argument).

First, Plaintiff failed to include a Local Rule 56.1 statement of facts in opposition to summary judgment. "For litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). Local Rule 56.1 "requires specifically that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate statement" under Local Rule 56.1(b)(3)(C) "of any additional facts that require the denial of summary judgment." *Hall v. Vill. of Flossmoor Police Dep't*, No. 11 C 5283, 2012 U.S. Dist. LEXIS 171439, at *28 n. 8 (N.D. Ill. Dec. 4, 2012) (citing *Chicon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005)); *see also Parvati Corp. v. City of Oak Forest*, No. 8 C 0702, 2012 U.S. Dist. LEXIS 37029, at *1 (N.D. Ill. Mar. 20, 2012) ("Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a *separate* statement of additional facts that requires the denial of summary judgment") (emphasis added); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Simply providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court."). "The rationale behind this rule is that if the non-movant includes additional facts in only the Local Rule 56.1(b)(3)(B) response, the movant is unfairly deprived of a vehicle under Local Rule 56.1 to dispose those facts because the rule permits movants to reply only to a Local Rule 56.1(b)(3)(C) statement, not a Local Rule 56.1(b)(3)(B) response." *Hall*, 2012 U.S. Dist. LEXIS

171439, at *28 n. 8 (citing *Johnson v. County of Cook*, No. 8 C 2139, 2012 U.S. Dist. LEXIS 98110, at *13 (N.D. Ill. July 16, 2012)); N.D. Ill. LR. 56.1(a)(3). Plaintiff failed to comply with Local Rule 56.1's requirement and only filed a response to Defendant's statement of facts. (Dkt. 66). In doing so, Plaintiff has denied Defendant an opportunity to respond to Plaintiff's additional factual material.

Instead of filing a separate statement of additional facts as required by Local Rule 56.1, Plaintiff included a "Disputed Material Facts" section in her memorandum in opposition to summary judgement. (Dkt. 65, 2-6). Ordinarily, parties are required to include a statement of facts in their memoranda of law, in addition to their Rule 56.1 statement of facts. *See e.g., FirstMerit Bank, N.A. v. 2000 N. Ashland, LLC*, No. 12 C 572, 2014 U.S. Dist. LEXIS 159741, at *11 (N.D. Ill. 2014). However, given the content of this section, it is unclear to the Court whether the purpose of this section is to further respond to Defendant's statement of facts or to submit Plaintiff's own version of the facts. If Plaintiff intended the latter, then as noted above, Plaintiff should have filed these additional facts in a separate document and omitted references to the Board's statement of facts and additional legal arguments. *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006) (A party's "statement of material fact [does] not comply with Rule 56.1 [if] it fail[s] to adequately cite to the record and [is] filled with irrelevant information, legal arguments, and conjecture"). More troubling for the Court is the substance of Plaintiff's "Disputed Material Facts" section. Much of Plaintiff's "facts" include wholly irrelevant material,[1] material that is directly

---

[1] For instance, Plaintiff describes the rating scale for teachers and arguing that because she never finished her remediation, she should not have received a rating. (Dkt. 65 ¶¶ 1-3). This information is

contradicted by the record,[2] and pure legal arguments and conjecture. For example, Plaintiff repeatedly claims that Defendant caused Plaintiff's depressive episodes and worsened Plaintiff's condition.[3] (Dkt. 65 ¶¶ 20, 21, 31). This assertion is irrelevant to the legal inquiry at issue and not based on any evidence in the record.

Second, Plaintiff's response to Defendant's statement of facts (Dkt. 66) contains several deficiencies. In responding to a movant's statement of facts, the non-moving party must "admit or deny each factual statement proffered by the defendant in a summary judgment motion and designate with specificity and particularity those material facts believed to establish a genuine dispute for trial." *Greer v. Board of Edu. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). Plaintiff's response improperly included additional facts, legal arguments and conclusions, and facts not cited by any part of the record at all. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 644 (7th Cir. 2008) (holding that because the non-movant's Local Rule 56.1(b)(3)(B) response "contained several extremely long, argumentative paragraphs, and in those paragraphs [the non-movant] simultaneously denied the veracity of [the movant's] proposed material facts and presented additional facts of his own…, the

---

irrelevant to whether Defendant reasonably accommodated Plaintiff's disability. It is also not relevant background material.

[2] For example, Plaintiff's memorandum states: "Plaintiff did not voluntarily resign as stated in DSOF, ¶ 62—she was forced to resign in order to receive unemployment benefits which she could not do as an employee suspended without pay for an indefinite period of time." (Dkt. 65, ¶ 22). Plaintiff provides no citations in support of this assertion. Moreover, this assertion is directly contradicted by Plaintiff's deposition testimony, which states that she voluntarily resigned due to health concerns. (Dkt. 59, Ex. A, 114:12-114:20).

[3] Plaintiff states: "Lastly, in DSOF ¶ 76, there is mention of several dates…where Plaintiff was not fit to work…The various stressors caused by Defendant such as losing her job, being called a danger to children, and being evicted from her homes are what caused this. There is no reason to believe that Plaintiff's medical condition would have deteriorated but for the culpable conduct on the part of Defendant by exposing Plaintiff needlessly to these stressers [sic]." (Dkt. 65 ¶ 31).

4

district court did not err by refusing to consider the facts he proposed"). For example, Plaintiff's responses to paragraphs 6, 14, 28, 33, 36, 38, 41, 60, 65, and 67 contain additional factual material and legal argument with no citations to the record. (Dkt. 66). Even when Plaintiff does not dispute the Board's factual assertions, she improperly includes additional arguments and facts. *See, e.g.,* (Dkt. 66, ¶¶ 14, 28, 31, 34, 38).[4] Finally, several of Plaintiff's responses include no factual material, but pure legal arguments or conjecture. These legal arguments are inappropriate in a statement of fact or a response to a statement of fact. (Dkt. 66, ¶¶ 28, 31, 33).[5]

Defendant requests that the Court strike or ignore Plaintiff's response to Defendant's statement of facts (Dkt. 66), and Plaintiff's "Disputed Material Facts" section in Plaintiff's memorandum (Dkt. 65 ¶¶ 1-31). Rather than take the drastic measure of striking Plaintiff's response or section of a memorandum in their entirety, the Court only considers material facts supported by citations to the record, rather than argumentation or conjecture. *See Flint*, 791 F.3d at 767.

Finally, Defendant requests the Court strike Macon's affidavit, invoking the "sham affidavit" doctrine. The Seventh Circuit has long held "that parties cannot

---

[4] As an example, paragraph 31 of Defendant's Statement of Undisputed Facts describes Plaintiff's request for intermittent leave and cites to Plaintiff's deposition testimony saying that she could not anticipate when an episode would arise and that she could have an episode at any time. (Dkt. 66, ¶ 31). In response, Plaintiff states: "Undisputed. However, this is no different than if one having [sic] epilepsy or had a previous heart attack. It is unpredictable when, or if, a reoccurrence will happen for any physical malady but that is no reason to discriminate or treat that person differently." (*Id.*).

[5] Paragraph 33 of Defendant's statement of facts asserts that Principal Jackson was in a position to determine whether Plaintiff's requested accommodations were feasible and would also be the person implementing any accommodations. (Dkt. 66 ¶ 33). Plaintiff responds: "Disputed. Just because Jackson is the Principal doesn't mean she is able to know if the accommodations are feasible. There has been no mention of any special training or expertise of Jackson to demonstrate she is the person for this role." (*Id.*) Plaintiff fails to cite the record to support this statement. This is improper legal argument in the statement of facts.

5

thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Arce v. Chicago Trans. Auth.*, 311 F.R.D. 504, 510 (N.D. Ill. 2015) (citing *Bank of Illinois v. Allied Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996)). The Seventh Circuit has also stated that it is "highly critical of efforts to patch up a party's deposition with his own subsequent affidavit." *Russel v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) (collecting cases). Thus, when "deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because of a lapse in memory in the circumstances is a plausible explanation for the discrepancy." *Id.* at 67-68. That being said, credibility determinations by the Court are not proper on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Defendant argues that the affidavit directly contradicts Plaintiff's deposition testimony and cites only one example for this proposition. In examining the portion of the deposition cited, it appears to the Court that Plaintiff misunderstood the question and clarified that she was confused. (Dkt. 59, Ex. A, 59:2-13). However, Plaintiff's affidavit does contradict her responses to Defendant's statement of fact. *Compare* (Dkt. 65, Affidavit ¶¶ 13, 15, 17-18) *with* (Dkt. 66 ¶¶ 42-54). Plaintiff's affidavit also asserts several facts for which there is no other support in the record.[6] And like the "Disputed Material Facts" section in Plaintiff's memorandum, many of

---

[6] For example, the only evidence that teachers have discretion on when to enter grades is Plaintiff's statement in her affidavit. (Dkt. 65, Affidavit ¶ 15). However, this fact is largely irrelevant to the issues in the case.

the facts in the affidavit are irrelevant (*e.g.*, the difficulties of teaching creative writing) (Dkt. 65, Affidavit ¶ 13). The factual disputes manufactured by the affidavit: (1) are not so contradictory as to necessitate striking.; and, (2) are largely immaterial to the outcome of the motion for summary judgment. Accordingly, the Court declines to strike the affidavit.

## BACKGROUND

The Board hired Macon as a substitute teacher in 1995. (Dkt. 59 ¶ 1). In 2002, Macon transferred to a regular teacher position at Gwendolyn Brooks Preparatory Academy ("Brooks"). (*Id*.). The Board hired Shannae Jackson as Brooks' Assistant Principal in 2012. (*Id*. at ¶ 2). Jackson was promoted to Principal in 2016. (*Id*.).

Macon taught high school English courses at Brooks. As a teacher, her duties included supervising children, taking attendance, teaching lessons, creating lesson plans, responding to emails, working and collaborating with other teachers, communicating with parents, grading student work, and inputting grades for student work. (*Id*. at ¶ 3). Macon testified that teachers need people skills in order to interact with students, teachers, and parents; instructional skills; and the ability to engage students in learning. (*Id*.). Macon's employment is governed by a collective bargaining agreement ("CBA") between the Board and the Chicago Teacher's Union. (*Id*. at ¶ 4).

**1. The December 14, 2016 Incident**

On December 14, 2016, the English Department held a staff meeting, which Macon attended. (Dkt. 59 ¶ 12). Macon left the meeting because she was "feeling out

7

of sorts."[7] (*Id.* at ¶ 13). Macon proceeded to the main office, crying. (*Id.* at ¶ 14). A clerk in the office attempted to speak to Macon, at which point Macon "exploded and lost it." (*Id.*) Macon began throwing things in the room, flipped over a table, kicked chairs, and knocked items off the file cabinets and tables. (*Id.*). The clerk and another teacher attempted to hold Macon down so she "would not cause bodily harm to herself and the staff that was present." (*Id.* at ¶ 15). Macon scraped the clerk's arm and dented a filing cabinet. (*Id.*). Thereafter, Macon left Brooks for the day and went to the hospital. (*Id.*; Dkt. 65, Affidavit ¶ 12). Macon does not remember this event, although the details were recounted to her after the fact.[8] (Dkt. 59, Ex. A, 39:20-40:21).

On February 6, 2017, Principal Jackson issued Macon a PIP based on the December 14, 2016 incident, noting that Macon "could have put herself and others in danger." (Dkt. 59 ¶ 18). Macon admits that, regardless of why she had the episode, "Principal Jackson would have reason to be concerned if [Macon exhibited] violent behavior, [including] damage of property or violence to[wards] others." (*Id.* at ¶ 20). Macon also admits that if she "were to have another episode where [she was] violent or kicking things and [she] was in a classroom, that would not be safe for students." (*Id.*). Following the February 6, 2017 meeting, Jackson and Macon agreed that Macon would seek medical care. (Dkt. 65 ¶ 12).

---

[7] The parties contest whether she left "abruptly." (Dkt. 65, Affidavit ¶ 12).
[8] Macon testified that, although she does not remember the events, various individuals told her what happened and showed her pictures of the damaged room and dented cabinet. (Dkt. 59, Ex. A, 39:20-40:21). Plaintiff does not deny the incident but explains that she was experiencing stress at home and was having a panic attack and flashbacks to an earlier incident where she felt cornered by another administrator. (Dkt. 66 ¶ 18).

8

## 2. Macon Is AWOL and Requests Accommodation

Several months later, from March 24, 2017 to June 6, 2017, Macon was absent from school without leave ("AWOL").[9] (Dkt. 59 ¶ 21). On April 20, Macon sent a request for accommodations to the Board's Equal Opportunity Compliance Office ("EOCO"). (*Id.* at ¶ 22). Julia Simmons was the investigator assigned to the case. (*Id.* at ¶¶ 23-24). Macon's first request for accommodations was incomplete, so Macon submitted an updated request on May 10, 2017. (*Id.* at ¶¶ 25-26). The updated request included an updated Health Care Provider Certification from Macon's psychologist, Dr. Beck. (*Id.* at ¶ 27). Dr. Beck listed Macon's health conditions, which included major depression, and stated that Macon's medical condition limited her ability to: (1) care for herself, (2) communicate with others, and (3) "function at place of employment" as a result of flashbacks from past trauma. (Dkt. 59, Ex. O, 5). He further stated that Macon's "anxiety, mood dysregulation and poor concentration limits her ability to teach/lead students, effectively write lesson plans, and communicate [with] parents and administration." (*Id.*). When asked if Macon's impairments are permanent, Dr. Beck wrote "yes, [patient] will need intermittent accommodations when impairments (mental and physical) are active." (*Id.*). Macon

---

[9] The Board argues that because Macon had not been approved for a leave of absence, she was AWOL. Macon vigorously contests this. She argues that she was out on valid "medical leave" based on her doctor's note dated June 6, 2017. (Dkt. 65 ¶ 6). Macon provides no evidence to suggest that a doctor's note provided after an employee has been absent transforms an AWOL status into valid medical leave. Macon relies on the Board's response to her request for accommodation, which stated: "even though you have not been on an approved leave of absence and are technically AWOL, as an accommodation you will be permitted to return to work according to the directives provided to you by the Office of Employee Engagement." (Dkt. 59, Ex. S, 1). Macon has not presented any evidence suggesting the Board's decision to allow Plaintiff to return to work without penalty transforms Plaintiff's AWOL absence into a valid medical leave.

9

admits that as of May 10, 2017, the day Dr. Beck filled out the certification, she could not perform her job as a teacher or function at work. (Dkt. 59, Ex. A, 72:22-73:7).

Macon's May 10, 2017 request for accommodations requested eleven accommodations including retroactive time off work. (Dkt. 59 ¶ 30). Simmons discussed the accommodations with Macon on May 17, 2017. (*Id.* at ¶ 32). On May 18, 2017, Simmons discussed the request for accommodation with Principal Jackson. (*Id.* at ¶ 33). It is the Board's position that Principal Jackson was the person in the position to determine whether the accommodations were feasible as she would be the individual implementing any accommodations at Brooks.[10] (*Id.*) On May 22, 2017, the Board sent Macon a letter informing Macon that she was AWOL and ordering her to return to work immediately. (*Id.* at ¶ 34). The next day, on May 23, 2017, the Board sent Macon a letter responding to the requests for accommodation. (Dkt. 59 ¶ 35). Each request for accommodation and the Board's responses are set forth in detail below. The Board did allow Macon to return to work without penalty.

Despite the Board's order to return to work immediately, Macon did not return until several weeks later on June 7, 2017. (Dkt. 59 ¶ 37). On that date, Macon met Principal Jackson and Assistant Principal Melissa Resh at Brooks' school entrance. Principal Jackson asked Macon to accompany her to the auditorium with a note from Macon's doctor. (*Id.* at ¶¶ 55-56). Assistant Principal Resh copied the doctor's note.

---

[10] As noted above, Macon contests this: "[j]ust because Jackson is the Principal doesn't mean she is able to know if the accommodations are feasible. There has been no mention of any special training or expertise of Jackson to demonstrate she is the person for this role." (Dkt. 66 ¶ 33). Plaintiff fails to provide a citation for this assertion. Accordingly, the Court disregard's Plaintiff's arguments regarding Principal Jackson.

(*Id.*). Principal Jackson then told Macon that, pursuant to directives from the law department, Macon should leave the premises. (*Id.*). As Macon was exiting the auditorium, Macon turned around and lunged at Principal Jackson saying "that's what you get bitch!" (*Id.* at ¶ 57). Two security officers intervened and asked Macon to leave the building. (*Id.*). Macon testified that she does not remember the incident.[11]

On August 4, 2017, the Board approved dismissal charges for Macon. The Board charged Macon with: (1) engaging in insubordination, (2) failing to follow Board policies, (3) making threats of physical violence, and (4) failing to exercise professional judgment. (Dkt. 59 ¶ 59). The Board held a pre-suspension hearing on August 18, 2017. (*Id.* at ¶ 61). Based on that hearing, Macon was suspended without pay, effective August 22, 2017. (*Id.*). Macon voluntarily resigned on May 25, 2018 before her dismissal hearing.[12]

The Board deposed Dr. Beck on January 10, 2019. (Dkt. 59 ¶ 64). Dr. Beck treated Macon from March 2017 to November 2018. (*Id.* at ¶¶ 64, 76). He diagnosed her with major depression. (*Id.* at ¶ 65). Dr. Beck also noted that Macon reported bouts of physical aggression and admitted having homicidal thoughts, such as stabbing her former principal. (*Id.* at ¶ 67). At his deposition, Dr. Beck testified that Macon was not fit to work from March 28 to June 6, 2017. (*Id.* at ¶¶ 74-76). He cleared her to work on June 7, 2017. However, before the start of the 2017-2018 school year,

---

[11] Macon also argues that this incident was caused by Principal Jackson who stood behind Macon too closely. (Dkt. 66 ¶ 57).

[12] As noted above, Plaintiff argues that she "did not voluntarily resign …—she was forced to resign in order to receive unemployment benefits which she could not do as an employee suspended without pay for an indefinite period of time." (Dkt. 65, ¶ 22). Plaintiff provides no citations in support of this assertion. Moreover, Plaintiff testified at her deposition that she *did voluntarily* resign due to health concerns. (Dkt. 59, Ex. A, 114:12-114:20).

11

Macon's medical condition deteriorated as a result of personal issues that occurred over the summer.¹³ (*Id*.). Dr. Beck testified that Macon was not fit to work as a teacher from September 2017 to November 2018. (*Id*.) Although Dr. Beck stopped treating Macon after November 2018, he testified that Macon's medical condition would persist for her whole life. (*Id*. at ¶¶ 70, 76)

**3. Macon's Requests for Accommodation**

Macon made eleven (11) requests for accommodations in May of 2017 for the school year ending in June 2017. Request No. 1 asked for extended time off from March 28, 2017 up to June 28, 2017. (Dkt. 59, Ex. S, 1). The Board partially granted this request. (*Id*.). Noting Macon's absence without leave had placed a burden on Brooks' administrators in terms of finding substitute teachers and addressing parent concerns, the Board accommodated Macon by allowing her to return to work without penalty but noted she would not be permitted to extend the leave. (*Id*.); (Dkt. 59 ¶ 39). The Board modified its own policies to provide this accommodation. (Dkt. 59 ¶¶ 30, 36-38).

Request No. 2 asked for intermittent leave, ranging from several minutes to several days, whenever Macon had an episode. (Dkt. 59, Ex. S, 2). When asked what Macon envisioned as "intermittent leave", Macon testified that "if [she] had an 'episode,' [she wanted] just time, whether it be from a few minutes to if [she] needed

---

¹³ According to Dr. Beck, Macon's condition continued to deteriorate throughout the fall. In October 2017, Dr. Beck recommended that Macon begin intensive outpatient counseling. He testified that Macon "would not be able to work at this time. She's deteriorated to the point where she needs significant support of counseling, which is time consuming on its own …And if she went into [intensive outpatient], that tells you she was not fit to work." (Dkt. 59 ¶ 74).

12

to leave for the rest of the day." (Dkt. 59 ¶ 31). Macon noted that she could have an "episode" "at any time" if there "was a trigger of some sort" and that she had "no idea of knowing" when an episode would come on. (*Id*.). The Board denied this request. It noted that the unpredictability of potential episodes, and the fact that Brooks' administration would have almost no notice of the episodes, presented an undue hardship on the Board, Brooks, and the students. (Dkt. 61, 11) In addition to being disruptive to students, the Board noted that "if Plaintiff needed to leave abruptly in the middle of one of her classes, an administrator would likely have to cover her class because Brooks cannot get a substitute teacher in the middle of the day or ask another teacher to cover without violating the CBA." (*Id*.). However, the Board informed Macon that if she needed a few moments to collect herself, a staff member could relieve her for five minutes time. (Dkt. 59 ¶ 42).

In Request No. 4, Macon requested a class size of no more than 24 students per class. (Dkt. 59 ¶ 44). The Board denied this request, noting that it would violate the CBA. (*Id*.). When asked why the school could not just "shift a couple of students around to another teacher" to accommodate Macon, Principal Jackson explained that such shifting would violate the CBA and would be difficult to implement at the end of the school year. (*Id*. at ¶ 45). Such shifting would result in putting students in a different course with a different teacher, a month before the school year was to end, potentially impacting the students' grades and ability to graduate. (*Id*.). The Board similarly denied Request No. 5, which requested a change in the number of minutes to Macon's class periods from 103 minutes to 100 minutes. (*Id*. at ¶ 47). Macon

requested that she be granted a 50 minute break after teaching for 100 minutes, instead of 103 minutes. (*Id*.). Given that all class periods at Brooks were 103 minutes, and that it was late in the school year, the Board denied this request. (*Id*.)

Requests No. 3, 6, 7, 8, 9, 10, and 11 were all granted in full. Request No. 3 asked that Macon would have no more than 2 classes to prepare for. (Dkt. 59 ¶43). The Board granted this request. Request No. 6 asked for two to five feet of personal space and that Macon not be required to be in the hallway during student passing periods. (*Id*. at ¶ 48) The Board granted this request, absent an emergency. (*Id*.). Request No. 7 asked that Plaintiff not be required to produce documents, such as lesson plans, that exceed five typed pages. (*Id*. at ¶ 49). The Board approved this request, so long as Macon's plans and documents met the curriculum needs and requirements. (*Id*.). In Request No. 8, Macon requested the ability to enter grades offsite, which the Board granted. (*Id*. at ¶ 50). Request No. 9 asked that Macon be allowed to sit in a personal space while teaching. (*Id*. at ¶ 51). The Board responded that so long as Macon was able to satisfactorily perform her essential job functions, Macon could sit or stand as needed. (*Id*.) Request No. 10 requested decreased tasks outside of Macon's daily routine (Macon could not provide an example of such a task) and more time to complete tasks. (*Id*. at ¶ 52). This request was granted, so long as Macon could perform the essential functions of her job. (*Id*). Macon was told to notify Principal Jackson whenever she needed more time or if she felt a task was not routine. (*Id*.). Finally, in Request No. 10, Macon asked for verbal and written instructions, which the Board agreed to provide. (*Id*. at ¶ 53).

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources*, Inc., 839 F.3d 658, 661 (7th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

To survive a motion for summary judgment, the plaintiff need not prove his case; "he need only show that there is a genuine issue of material fact as to each element." *Gil v. Reed*, 381 F.3d 649, 659 (7th Cir. 2004) Summary judgment is proper, however, against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323; *see also White*, 829 F.3d at 841 (summary judgment warranted where a reasonable juror could not find in favor of the non-moving party "on the evidence submitted in support of and opposition to the motion for summary judgment") (internal citation omitted).

**DISCUSSION**

Plaintiff brought a single count failure to accommodate claim under the ADA. To defeat summary judgment on an ADA failure-to-accommodate claim, a plaintiff must present sufficient evidence to establish that: (1) she is a qualified individual with a disability as defined by the ADA, (2) her employer was aware of her disability, and (3) her employer failed to reasonably accommodate her disability. *Bunn v. Khoury Enters, Inc.*, 753 F.3d 676, 682 (7th Cir. 2014). Defendant does not dispute that Macon has a disability but argues that she has failed to establish the first and third elements.

In order to prevail on a failure to accommodate claim under the ADA, a plaintiff must first show that she is a "qualified individual with a disability." *Bunn*, 753 F.3d at 682; 42 U.S.C. § 12112(a). A "qualified individual" with a disability is a person who, with or without reasonable accommodations can perform the essential functions of the employment position." 42 U.S.C. § 12112(8). "A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.' § 12112(8). If the proposed accommodation does not make it possible for the employee to perform his job, then the employee is not a 'qualified individual' as that term is defined in the ADA." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017).

The Seventh Circuit has repeatedly held that a reasonable accommodation under the ADA "is expressly limited to those measures that will enable the employee to work. An employee who needs long-term medical leave *cannot* work and thus is not

a 'qualified individual' under the ADA." *Severson*, 872 F.3d at 479 (emphasis in original) (citing *Byrne v. Avon Pods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003)). "[A] medical leave spanning multiple months does not permit [an] employee to perform the essential functions of his job. To the contrary, the inability to work for a multi-month period removes a person from the class protected by the ADA." *Id*. ("The ADA is an antidiscrimination statute, not a medical-leave entitlement."); *see also Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1038 (7th Cir. 2013) ("A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes."); *Golden v. Indianapolis Housing Agency*, 698 Fed. App'x. 835, 837 (7th Cir. 2017) (affirming grant of summary judgement to the employer when the plaintiff asked for six months leave in addition to FMLA leave, which "remove[d] an employee from the protected class under the ADA"); *Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) ("The rather common-sense idea is that if one is not able to be at work, one cannot be a qualified individual."). Simply put, "an extended leave of absence does not give a disabled individual the means to work; it excuses his not working." *Severson*, 872 F.3d at 481.

Such is the case here. It is undisputed that Macon was not fit to work from March 28, 2017 to June 6, 2017—the timeframe when Macon was AWOL. (Dkt. 59 ¶¶ 21, 63). Even then, when Macon returned to work on June 7, 2017, she became physically violent, shouted profanity at Principal Jackson, and was escorted off the premises by security personnel. (*Id*. at ¶¶ 55-58). Before the start of the subsequent

17

school year, in August and September of 2017, Macon's condition deteriorated and she was again unable to work. (*Id.* at ¶¶ 74-76). She was admitted to an intensive outpatient program in October 2017. Macon's treating physician, Dr. Beck, testified that individuals in intensive outpatient programs are unfit to work given the intensity of the program. (*Id.* at ¶ 74). Dr Beck observed Macon on November 3, 2017, December 11, 2017, February 14, 2018, March 12, 2018, May 24, 2018, September 5, 2018, October 8, 2018, and November 12, 2018. (*Id.* at ¶ 76). He confirmed that on each of those dates, Macon was not fit to work as a teacher. (*Id.*). In her own deposition, Macon testified that she did not believe she was fit to work as a teacher from March 28, 2017 to the date of her deposition in October 2018. (*Id.* at ¶ 63).

Additionally, the accommodation proposed by Macon would not permit her to meet the essential functions of her job.[14] Macon requested extended leave through June 28, 2017. Although the Seventh Circuit has left open the possibility that a brief leave to deal with a medical condition could be a reasonable accommodation, it is not an appropriate accommodation here. *Severson*, 872 F.3d at 841 ("For example, we noted that time off may be an apt accommodation for intermitted conditions. Someone with arthritis or lupus may be able to do a given job even if, for brief periods, the inflammation is so painful that the person must stay home") (internal citations omitted). In this case, Macon needed long-term medical leave for months at a time,

---

[14] Macon requested eleven accommodations. The Board granted eight, denying three. In responding to the Board's summary judgment motion, Plaintiff only challenged the Board's failure to accommodate her by not granting "extended time off from work duties from March 28, 2017, to June 28, 2017." (Dkt. 65, 9).

18

not the short, intermittent leave envisioned by the Seventh Circuit.[15] More importantly, the requested accommodation—extended leave—would not enable Macon to work or to fulfill the essential functions of her position. It merely "excuses [her] not working." *Severson*, 872 F.3d at 481. The record establishes that even if the Board granted Macon's requested accommodation, Macon would still be unable to perform the essential functions of her position. Macon is therefore not a qualified individual under the ADA.

The record indicates that due to her medical condition, Macon was unable to work for many months, and arguably years, at a time. She was thus unable to perform the essential functions of her job. Accordingly, Macon was not a qualified individual under the ADA, and her ADA claim fails as a matter of law. Given this ruling, the Court need not address the third element. The Board is entitled to summary judgment.

---

[15] At the time Macon requested accommodations in May 2017, she requested flexible, intermittent leave that would last several hours to several days depending on the severity of her episode. With hindsight, the evidence demonstrates that Macon needed many months of medical leave—through at least November 2018—not an extension through June 2017 or a day or two off at a time. *Golden v. Indianapolis Housing Agency*, 2017 WL 283481, at *7 (S.D. Ind. Jan. 23, 2017) (the court considers not only the facts available to the employer at the time of the termination, but also non-speculative evidence showing that, in hindsight, the requested leave would not have enabled the plaintiff to work on a regular basis) (citing *Basden*, 714 F.3d at 1038).

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment [58].

E N T E R:

Dated: March 23, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge